UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

– against –

ROBERT ROPER,

Defendant.
-------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U. S. DISTRICT COURT E.D. N.Y.

★ NOV 1 2005 ★

TIME A.M. _____
P.M.

**MEMORANDUM
and ORDER**

05 CR 44 (SLT)

**TOWNES, United States District Judge:**

Defendant, Robert Roper (hereinafter "Roper" or "Defendant"),

challenges his conviction of a federal disorderly conduct charge on November 24,

2003, following a petty offense trial that was conducted before Magistrate Judge

Cheryl L. Pollak. Sentence was imposed on January 19, 2005. Defendant argues

(1) that there was insufficient evidence to support a finding that he unreasonably

obstructed the entrance of the Veterans Affairs Hospital (the "Hospital") in

Brooklyn, New York; (2) that Magistrate Judge Pollak erred in declining to read a

*mens rea* requirement into every element of 38 C.F.R. § 1.218(a)(5) (the "Statute");

and (3) that the Statute is both reviewable by this Court and unconstitutionally

vague and overbroad.

AFFIRMED.

## STATEMENT OF FACTS

Defendant appeals his conviction for creating a disturbance at the

Hospital in violation of the Statute, which provides in relevant part:

> **Disturbances**. Conduct on property
> which creates loud or unusual noise; which
> unreasonably obstructs the usual use of
> entrances, foyers, lobbies, corridors, offices,
> elevators, stairways, or parking lots; which
> otherwise impedes or disrupts the
> performance of official duties by Government
> employees; which prevents one from obtaining
> medical or other services provided on the
> property in a timely manner; or the use of
> loud, abusive, or otherwise improper
> language; or unwarranted loitering, sleeping,
> or assembly is prohibited. In addition to
> measures designed to secure voluntary
> terminations of violations of this paragraph the
> head of the facility or designee may cause the
> issuance of orders for persons who are creating
> a disturbance to depart the property. Failure to
> leave the premises when so ordered constitutes
> a further disturbance within the meaning of
> this rule, and the offender is subject to arrest
> and removal from the premises.

The testimony at trial demonstrated that Defendant arrived at the

Veterans Affairs Hospital ("Hospital") in Brooklyn, New York on the morning

of September 24, 2001. The Hospital had instituted enhanced security

procedures in response to the events of September 11, 2001, and the line to enter

the Hospital extended out the door as patients waited to pass through the

security checkpoint, which required them to present identification, pass through

a metal detector, and have their belongings inspected before being allowed to

enter. A handful of people who wished to enter the Hospital, including

Defendant, approached Veterans Affairs Officer Claude Cleare ("Officer

Cleare") in the lobby and asked him to search their belongings separately in

order to allow them to bypass the security line and attain entry more quickly.

2

Officer Cleare asked each individual if he or she was carrying any contraband materials and requested that the individual empty his or her pockets as Officer Cleare searched the individual's bags. When Officer Cleare searched Defendant's bag, he discovered several materials that he suspected were contraband, including Bambu rolling paper, four unmarked bottles of pills, a Heplok IV used for intravenous injections, and a metal tube containing a white residue. Officer Cleare asked Defendant to step into the Police Operations Office ("Office") to continue the search. Officer Cleare testified that he took the Defendant aside in order to ask him privately whether he possessed any contraband and, if Defendant admitted to possessing prohibited materials, to dispose of such materials before permitting Defendant to enter the Hospital.

When Officer Cleare asked Defendant to explain the items in his bag, Defendant could not, but he denied that he possessed any contraband. When Officer Cleare requested that Defendant empty his pockets, Defendant refused, asking why he was being treated like a criminal. Officer Cleare testified that Defendant stated, "I'm black, you're black, why are you treating me like some damn criminal?" Defendant then refused to submit to any further searches. Officer Cleare testified that he was concerned by Defendant's reaction and that he put the items back in the Defendant's bag and told Defendant that he had to either leave the Hospital or return to the visitor's line and undergo the usual public search. Officer Cleare then escorted Defendant back to the lobby and returned to his post.

Officer Cleare testified that, instead of returning to the line or leaving the Hospital as he had been instructed, Defendant followed him and asked him why he could not continue on to his dental appointment. When Officer Cleare reiterated that his search had been discontinued and that he had to return to the security checkpoint line, Defendant began arguing with him "very loudly." The altercation between Officer Cleare and Defendant attracted the attention of the individuals in the security line and, according to Officer Cleare, interrupted the progress of the line despite the efforts of the other security guards to direct the crowd's attention away from the confrontation and to keep the line moving. Officer Cleare asked Defendant to lower his voice. When Defendant continued to argue loudly, the officer warned him that he was being disruptive and that if he persisted in his actions he would be cited for disorderly conduct. When Defendant did not cease the officer attempted to escort him back to the Office where other security officers were stationed. Defendant reacted by either pushing or hitting (the testimony was inconclusive on this point) Officer Cleare. Officer Cleare then informed Defendant that he was under arrest and reached for his handcuffs. Defendant struggled with Officer Cleare and resisted his attempts to handcuff him, causing several other officers to come over to help Officer Cleare subdue Defendant. One officer, Officer Marsala, had to leave his post at the security checkpoint to come over to assist Officer Cleare arrest Defendant. The officers subsequently handcuffed Defendant and he was placed in a holding cell.

4

Defendant was charged with one count of creating a disturbance in violation of the Statute. Specifically, Defendant was charged with "unreasonably obstruct[ing] the usual use of entrances, foyers, [and] lobbies" of the Hospital. Defendant was not charged with assault or with resisting arrest.

After a bench trial, Magistrate Judge Pollak issued a written decision on November 24, 2003, in which she credited the testimony of the Government's witnesses and found that the Government had proven Defendant's guilt beyond a reasonable doubt. Magistrate Judge Pollak found that Defendant had been argumentative and loud, that he pushed Officer Cleare, and that he resisted arrest. She also found that Defendant's actions required Officer Marsala and other officers to leave their posts and "slowed the progress of the line as visitors to the V.A. directed their attention to the defendant." Specifically, Magistrate Judge Pollak held that:

> Even if no one complained about the security line being 'backed up' as a result of the defendant's conduct, there was clearly a 'commotion' sufficient to attract the attention of Officer Marsala, and defendant's witness, Mr. Austin, testified that other people in the lobby 'all turned around and they were all looking.' Under these circumstances, this Court finds that the government has proved beyond a reasonable doubt through the credible testimony of witnesses who not only observed the defendant's loud, aggressive behavior, but were forced to deal with this behavior, that his actions unreasonably obstructed the usual uses of the entrance and lobby of the V.A. Hospital.

Magistrate Judge Pollak rejected Defendant's argument that the government had to prove that Defendant had intended to obstruct, or at least knew that he was obstructing, the Hospital entrance and lobby. Magistrate Judge Pollack held that it was sufficient that Defendant's actions were done knowingly and that they had the effect of obstructing the usual use of the Hospital lobby and entrance. Magistrate Judge Pollak further held that she had no jurisdiction to review the facial constitutionality of the statute because 38 U.S.C. § 1.218 confers exclusive review of Veterans Affairs regulations upon the Court of Appeals for the Federal Circuit.

## DISCUSSION

### I.    *Standard of Review*

Rule 58 of the Federal Rules of Criminal Procedure provides that a defendant appealing his conviction by a magistrate judge "shall not be entitled to a trial *de novo* by a judge of the district court. The scope of the appeal shall be the same as an appeal from a judgment of the district court to a court of appeals." Fed. R. Crim. P. 58(g)(2)(d). Thus, in reviewing a conviction entered by a magistrate judge following a bench trial, the magistrate judge's "findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo." *Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers, Ltd.*, 190 F.3d 64, 67 (2d Cir. 1999); *LoPresti v. Terwilliger*, 126 F.3d 34, 38-39 (2d Cir. 1997). Mixed questions of law and fact are likewise reviewed *de novo. See Connors v. Conn. Gen.*

*Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001); *White v. White Rose Food Corp.*, 237 F.3d 174, 178 (2d Cir. 2001).

Under the clear error standard, a reviewing court "may not reverse [a finding] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). Rather, a factual finding is clearly erroneous only when "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

1.   *Magistrate Judge's Finding that Defendant Unreasonably Obstructed the Usual Use of the Hospital's Entrances and Lobby*

Defendant argues that there was insufficient evidence presented at trial to prove that he "unreasonably obstructed the usual use" of the Hospital lobby and entrance. While the Court found no cases specifically addressing whether this determination would constitute a question of fact or a mixed question of law and fact in this context, several analogous cases indicate that it is a pure question of fact. *See City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 276-77 (E.D.N.Y. 2004) (Weinstein, J.) (holding that the determination of whether conduct constitutes a public nuisance is a question of fact under all circumstances); *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003) (Weinstein, J.) (discussing the elements of public nuisance, defined by the Restatement as an unreasonable interference with a right common to the general public, and noting that reasonableness is not an independent element but simply

goes to whether the interference with the public right is substantial)[1]; *Green v. Mann*, 655 N.Y.S.2d 627, 629 (App. Div. 1997) (holding in the context of property law that the question of whether an obstruction by the servient tenement constitutes an unreasonable interference with the use of an easement is generally a question of fact); *Fleischer v. White Rose Food Corp.*, 543 N.Y.S.2d 456, 458 (App. Div. 1989) (leaving to the jury the determination of whether defendant's obstruction of the sidewalk to unload goods was necessary and reasonable, as "[r]easonable use . . . is ordinarily a question of fact depending on its being temporary and necessary.")

Thus, Magistrate Judge Pollack's finding that Defendant's actions unreasonably obstructed the usual use of the Hospital's entrances and lobby may only be overturned if it is clearly erroneous. Magistrate Judge Pollak based her finding on the following testimony from the government's witnesses, whom she found to be credible: It was a busy morning at the Hospital when the Defendant arrived and the line extended out the door. When Officer Cleare discontinued the search of Defendant's belongings, he told him that he either had to leave the building or return to the security line. Defendant refused to do either, and instead stood very close to Officer Cleare and began arguing loudly with him. At this point people in the security line turned to see what was going on and the flow of traffic slowed as the officers at the security checkpoint

---

[1]In this opinion Judge Weinstein also quotes *Callanan v. Gilman*, 14 N.E. 264 (1887), as holding that "[w]hether an obstruction in the street is necessary and reasonable must generally be a question of fact to be determined upon the evidence relating thereto."

attempted to redirect attention back to the security screenings. Officer Cleare told Defendant that he was disrupting the flow of traffic in the security line and that he would be cited for disorderly conduct if he did not cease his aggressive behavior. The confrontation then escalated and Defendant hit or pushed Officer Cleare as the officer tried to escort him to a more private area, which led to Officer Cleare placing the Defendant under arrest and then attempting to handcuff him. It took at least four officers to subdue the Defendant, who continued to struggle with the officers and resist attempts to calm him or remove him from the area. One of the officers who came over to assist, Office Marsala, was the only officer manning the security checkpoint and the metal detectors, and it would have violated Hospital policy to permit anyone to pass through the security checkpoint and enter the Hospital until he returned to his post.

Defendant essentially argues that this evidence does not show that he obstructed anything because he did not physically block the Hospital entrance or lobby in a way that kept people from entering the Hospital. It is true that this case is not as clear-cut as one where a demonstrator lays down or sits down in a doorway and refuses to move, thereby preventing people from entering the facility or requiring them to use an alternative entrance – the effect here was an indirect one. However, several cases have held that a finding of obstruction does not require a showing that the defendant completely blocked an entrance or passageway or that anyone was actually prevented from entering or utilizing a facility as a result of the defendant's actions. *See United States v. Gilbert,* 47 F.3d

1116, 1119 (11th Cir. 1995) ("[T]he government need not present evidence that [the defendant] totally blocked the entrance or actually prevented patrons from utilizing the entrance."); *United States v. Bader*, 698 F.2d 553, 554-55 (1st Cir. 1983) (holding that defendant protestors obstructed a doorway by sitting down in it and requiring people to step over them even though there was no evidence that anyone was actually dissuaded from entering); *United States v. Sachs*, 679 F.2d 1015, 1017 (1st Cir. 1982) (holding that the term "obstruction" in and of itself does not imply complete blocking but instead encompasses actions which delay, impede, or hinder activity).

Moreover, though there admittedly are few cases dealing with obstruction in conjunction with this type of fact pattern, defendants have been convicted of unreasonably obstructing the usual use of entrances and lobbies for similar actions. In *United States v. Brasch*, 1996 U.S. Dist. LEXIS 18487, at *3-10 (S.D.N.Y. Dec. 12, 1996), the defendant was convicted of disorderly conduct under a statute identical to the one at issue here based on evidence that, upon entering a federal courthouse, he refused to put his calculator through the X-ray machine for scanning even after repeated requests that he do so, became agitated and refused to step out of line to allow those behind him to enter, would not leave the building when told to do so, and resisted efforts to arrest him, requiring other officers to come over and assist. Similarly, in *United States v. Lamson*, 1993 U.S. App. LEXIS 11780, at *1-4 (4th Cir. May 20, 1993), the court held in an unpublished opinion that a defendant unreasonably obstructed the

usual use of the entrance to a federal courthouse by refusing repeated requests to submit to screening procedures and, after finally walking through the metal detector in response to warnings that continued disruptive behavior would result in his arrest, refusing to stop when he set off the alarm. *Id.* at *2. The particular language of this regulation – prohibiting obstruction of the "usual use" of the VA facility, leaves the court with more leeway to hold that the normal activities of the Hospital were disrupted or delayed even if no direct physical blockage of an entryway occurred.

Thus, it cannot be said that Magistrate Judge Pollak's determination that Defendant unreasonably obstructed the usual use of the Hospital entrance and lobby was clearly erroneous. He loudly argued with a police officer, refused to leave the building or submit to a search of his belongings, hit or pushed the officer, and resisted arrest to such an extent that three other officers had to leave their posts to assist in subduing him. This led to a disruption in the ordinary flow of the security line and entrance of patients into the Hospital.

### III.    Mens Rea *Requirement*

Defendant argues that Magistrate Judge Pollak read an insufficient *mens rea* requirement into the VA regulation used to convict him. While the regulation itself contains no explicit *mens rea* requirement, Magistrate Judge Pollak interpreted it to require that the Government prove that Defendant knowingly engaged in conduct that had the effect of unreasonably obstructing

11

the usual use of the Hospital entrance and lobby. Magistrate Judge Pollak did

not, however, require proof that Defendant knew that he was unreasonably

obstructing the usual use of the Hospital entrance or lobby or that he intended

such an outcome. The Government supports the general intent *mens rea* applied

by Magistrate Judge Pollak, while Defendant argues that his specific intent to

cause the obstruction (or at least knowledge that he was causing such an

obstruction) is required in order to avoid the punishment of innocent conduct

and inadvertent obstruction. The level of *mens rea* that should attach to a

criminal statute is a question of law to be reviewed *de novo*.

　　　　The Supreme Court has held that the "presumption in favor of

scienter requires a court to read into a statute only that *mens rea* which is

necessary to separate wrongful conduct from 'otherwise innocent conduct.'"

*Carter v. United States*, 530 U.S. 255 (2000) (quoting *United States v. X-Citement*

*Video, Inc.*, 513 U.S. 64 (1994)). Thus, in *Carter*, the Court held with regard to a

bank robbery statute that it need not read a specific intent to steal or purloin into

the statutory scheme because proof of knowledge with respect to the *actus reus* of

the crime – the forceful taking of money – would suffice to separate punishable

wrongdoing from innocent conduct. The Court held that the other prong of the

statute, which made illegal the taking and carrying away of money with the

intent to steal or purloin, required a *mens rea* of specific intent because the

underlying *actus reus* – the taking and carrying away of money – was otherwise

innocent and non-culpable conduct. *Id.* Other cases have applied similar

12

reasoning in determining what intent requirement should be read into criminal statutes that are either silent on the issue of *mens rea* or are ambiguous as to the elements to which the included *mens rea* applies. *See X-Citement Video,* 513 U.S. at 68 (holding that "presumption in favor of scienter should apply to each of the statutory elements that criminalize otherwise innocent conduct" and requiring that the defendant knew both that he was trafficking in sexually explicit materials and that the subjects of the materials were minors, since trafficking in such materials is permitted when the subjects are adults); *Staples v. United States,* 511 U.S. 600 (1994) (requiring proof that the defendant knew his weapon had the characteristics which made its possession criminal in order to avoid criminalizing innocent gun ownership); *United States v. Weintraub,* 273 F.3d 139 (2d Cir. 2001) (stating that "[c]ourts . . . read criminal statutes that are silent or ambiguous as to the required standard of *mens rea* to demand knowledge of enough facts to distinguish conduct that is likely culpable from conduct that is entirely innocent" and holding that statutes criminalizing the use and disposal of asbestos materials required knowledge of the presence of asbestos because removing that element from the statute left only innocuous and unregulated conduct); *United States v. Figueroa,* 165 F.3d 111 (2d Cir. 1998) (stating that "statutes defining federal crimes are . . . normally read to contain a *mens rea* requirement that attaches to enough elements of the crime that together would be sufficient to constitute an act in violation of the law" and holding that the prosecution need not prove that a defendant who aided an alien whom he knew to be excludable to enter the

country also need know why the alien was excludable, as he had sufficient knowledge to know he had done something culpable).

Against this backdrop, it is necessary to determine the lowest level of *mens rea* which, applied to the regulation at issue, will ensure that an individual subject to prosecution is on notice that his conduct is wrongful, though not necessarily illegal. The Government argues that the Court should only focus on whether the Defendant was aware that his conduct was wrongful and not consider whether the *mens rea* as applied to others who might face prosecution under this statute might result in unjust prosecution, citing the standing requirements discussed previously indicating that a criminal defendant may not challenge the constitutionality of a statute that is constitutionally applied to him even if it might be unconstitutional with respect to third parties. However, this appears to be quite a different situation, as the Supreme Court has imposed an affirmative obligation on courts to read into criminal statutes a level of *mens rea* sufficient to separate innocent from wrongful conduct and presumably failure to read a sufficient *mens rea* into the statute will render it unconstitutional, regardless of the party to whom the regulation is applied. Moreover, as noted by Defendant, the Supreme Court itself has considered hypothetical outcomes under various *mens rea* requirements in determining which is constitutionally adequate to separate wrongful from innocent conduct. *See Staples*, 511 U.S. at 614.

14

The regulation, as construed by Magistrate Judge Pollak, does not have a *mens rea* requirement in "each of the statutory elements that criminalize otherwise innocent conduct." *X-Citement Video*, 513 U.S. at 68. Parsing the relevant provision into its component parts, its elements are (1) conduct, (2) on VA property, that (3) unreasonably obstructs the usual use of Hospital entrances, lobbies, etc. Magistrate Judge Pollak read a "knowingly" requirement into the first element, conduct, but not into the third element, the obstruction, which is the element that criminalizes what would otherwise be unregulated behavior. Both the Government and Magistrate Judge Pollak reasoned that because Defendant's underlying conduct – assaulting an officer and resisting arrest – was not innocuous, no further *mens rea* was required.[2] However, Defendant's conduct only happens to be wrongful in this case, and not for the reasons proscribed by this statute. If the Government had wished to punish Defendant's conduct on its own accord, it could have done so by charging him with assault and resisting arrest. But the Government only charged Defendant with unreasonably obstructing, and thus the effect of the obstruction is what makes Defendant's conduct criminal in this instance. Moreover, applying this *mens rea* broadly, any individual who is aware of what he is doing is susceptible

---

[2]Magistrate Judge Pollak also relied on the unpublished decision in *United States v. Rone*, 61 Fed. Appx. 535 (10th Cir. 2003), in which the court only required a showing that the defendant acted knowingly in using "loud, abusive, or otherwise improper language" as prohibited by section 1.218(a)(5). Not only is this opinion of questionable precedent, it also deals with a provision of the regulation in which the performance of the conduct – *i.e.*, using loud or abusive language – is what is criminalized, not the effect of the language, as it is with the effect of the conduct at issue here. *Rone* is, therefore, of little relevance to the determination of the proper *mens rea* in this case.

to prosecution under the regulation if that conduct results in an unreasonable obstruction, even if the underlying conduct is innocent. If this were a public welfare ordinance with no penal sanction[3], it might be appropriate to dispense with the *mens rea* requirement, but this construction seems highly problematic in the context of a federal criminal regulation.

However, though neither party has raised this issue, other language in the provision at issue imposes a supplemental level of *mens rea* that is sufficient to address these concerns. Following a listing of the violations, of which "unreasonable obstruction" is one, section 1.218(a)(5) provides that "[i]n addition to measures designed to secure voluntary terminations of violations of this paragraph the head of the facility or designee may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises." The requirement that an officer attempt to obtain voluntary compliance with the regulation by telling an individual that he or she is creating a disturbance and must either cease or leave the premises would suffice to put the individual on notice that his or her conduct is wrongful and not innocuous,

---

[3]Neither party has argued this, and it would be difficult to do so considering that the regulation allows for a jail sentence of up to six months and does not regulate in an area that has traditionally been subject to strict liability in the name of the public welfare. *See, e.g., United States v. Freed*, 401 U.S. 601, 609 (1971) (holding that a defendant in possession of a hand grenade need not know that it was not registered to him to be convicted because grenades are "highly dangerous offensive weapons" and "one would hardly be surprised to learn that possession of a hand grenade is not an innocent act").

which appears to be all that is required. However, at least one court has held in construing the phrase "in anywise obstruct, delay, or interfere with the free movement of any other person" that "the words themselves imply intentional action." *Int'l Society for Krishna Consciousness ("ISKCON") v. Eaves*, 601 F.2d 809 (5th Cir. 1979) (citing *Cameron v. Johnson*, 390 U.S. 611 (1968), which ruled that the words "obstruct" and "interfere" are not vague, and interpreting that decision to also require intentional action[4]).

Moreover, even if an additional *mens rea* requirement is read into the statute which requires that a defendant knows that his conduct will unreasonably obstruct (or is unreasonably obstructing) the usual use of the Hospital entrances or lobby before being prosecuted under the regulation, Defendant's conviction will still be upheld. It is not only reasonable to infer that Defendant knew he was obstructing the usual use of the lobby by refusing to abide by the security screening, assaulting an officer, and resisting arrest with such vigor that he required four or five officers to subdue him, it is clear that Defendant had actual notice that he was creating a disturbance based on Officer Cleare's statement to Defendant that he was being disruptive and that he would be cited for disorderly conduct if he did not cease what he was doing.

---

[4]No other decision interpreting *Cameron* to require specific intent in any regulation criminalizing unreasonable obstruction or interference.

## IV.   *Authority to Review the Constitutionality of 38 C.F.R. § 1.218*

Defendant argues that the VA regulation contained in 38 C.F.R.
§ 1.218(a)(5) is unconstitutionally overbroad as it sweeps in a substantial amount
of protected speech. Magistrate Judge Pollak held that she did not have
jurisdiction to review Defendant's facial challenge to the statute because
38 U.S.C. § 502 provides that judicial review of VA regulations such as the one at
issue here may only be had in the Federal Circuit. Section 502 provides in
relevant part that an "action of the Secretary to which section 552 (a)(1) or 553 of
Title 5 (or both) refers . . . is subject to judicial review" and that such review
"shall be in accordance with chapter 7 of Title 5 and may be sought only in the
United States Court of Appeals for the Federal Circuit." As a question of law,
Magistrate Judge Pollak's finding is reviewed *de novo*.

Magistrate Judge Pollak relied heavily on the decision in *Griffin v.
Dep't of Veterans Affairs*, 129 F. Supp. 2d 832, 837 (D. Md. 2001) ("*Griffin I*"), in
which the District of Maryland held that it did not have jurisdiction to review a
facial challenge to the constitutionality of 38 C.F.R. § 1.218(a)(14), a provision of
the same statute at issue here dealing with the use of a confederate flag in a
demonstration at a VA cemetery, because section 502 grants exclusive review of
the constitutionality of this and other VA regulations to the Court of Appeals for
the Federal Circuit. The court held that this regulation falls within the ambit of
section 502 because it is the kind of VA rulemaking referred to in section

552(a)(1).[5] *Id.* The court further held that "the statute is clear that 'facial

constitutional attacks on regulations promulgated by the Secretary may be

pursued in one of two ways – either in accordance with the procedure set forth in

the Veterans' Judicial Review Act [not applicable here], or directly in the

Federal Court of Appeals as permitted by 38 U.S.C. § 502.'" (quoting *Hall v.*

*U.S. Dep't of Veterans Affairs*, 85 F.3d 532, 534 (11th Cir. 1996)). The trial court's

opinion in *Griffin I* was subsequently reversed by the Fourth Circuit based on its

separate holding regarding the constitutionality of 38 C.F.R. § 1.218(a)(4) as

applied to the defendant in that case. *See Griffin v. Dep't of Veterans Affairs*, 274

F.3d 818 (4th Cir. 2001) ("*Griffin II*"). However the appeals court left the

jurisdictional holding as to the facial challenge undisturbed, noting that "[t]he

[trial] court concluded that it lacked jurisdiction to hear [the defendant's] facial

attack on 38 C.F.R. § 1.218(a)(14) . . . citing 38 U.S.C. § 502, which allows for

judicial review of VA rulemaking, but only in the Federal Circuit[]." *Id.* at 825.

Finally, the Federal Circuit reviewed the defendant's facial challenge to 38

C.F.R. § 1.218(a)(14), stating "[p]ursuant to 38 U.S.C. § 502, we have jurisdiction

to review both the rulemaking process and the challenged rules of the VA, that

jurisdiction extending to amendment, revision or repeal of the VA's rules as

---

[5] 5 U.S.C. § 552(a)(1) provides, in relevant part: "Each agency shall separately state and currently publish in the Federal Register for the guidance of the public . . . (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." Magistrate Judge Pollak notes in her decision that 38 C.F.R. § 1.218(a)(5), the disorderly conduct provision at issue here, was published in the Federal Register at 50 Fed. Reg. 29, 226 (July 18, 1985), and therefore falls within the broad scope of section 552.

well." *Griffin v. Dep't of Veterans Affairs*, 288 F.3d 1309, 1317 (Fed Cir. 2002)

("*Griffin III*"). *See also Hall*, 85 F.3d at 535 (holding that the plaintiff "sought to

overturn . . . a [Veterans' benefits] regulation promulgated by the Secretary.

The district court lacked jurisdiction over this question of law. Aside from the

avenue of review made possible by the VJRA [for benefits determination],

judicial scrutiny of the regulation is available exclusively in the Federal Circuit

Court of Appeals in accordance with 38 U.S.C. § 502"); *Chinnock v. Turnage*, 995

F.2d 889, 893 n.2 (9th Cir. 1993) ("Precedent opinions by the General Counsel are

subject to 5 U.S.C. § 552(a)(1), according to 38 C.F.R. § 14.507(b), and are

therefore reviewable, but 'only in the United States Court of Appeals for the

Federal Circuit.' 38 U.S.C. § 502.").

Though broken down into a confusing array of sub-arguments,

Defendant's main response is that, despite these decisions, a *criminal defendant*

may not be prohibited from defending himself from penal sanction on the

grounds that the law under which he is charged is facially overbroad in violation

of the First Amendment and that confining review of the regulation here to the

Federal Circuit does just that. Defendant distinguishes *Griffin I, II,* and *III, Hall,*

and *Chinnock* as "civil cases where plaintiffs challenged non-criminal V.A. rules

or regulations." (Def. Mem. at 38.) While the benefits regulation considered in

*Hall* and the General Counsel opinion in *Chinnock* clearly fall outside of the

criminal context, *Griffin* dealt with a different provision of the same statute at

issue here and one that also carries criminal penalties. Nonetheless, Griffin was

not himself a criminal defendant subject to penal sanction, as he challenged the regulation as a plaintiff in a civil suit against the Department of Veterans Affairs after his request to fly the confederate flag at a VA cemetery was denied. Defendant states that no court other than the trial court in this case has declined to exercise jurisdiction over a criminal defendant's facial challenge to a VA regulation because of the language in section 502, and the Government does not dispute that contention.

However, Defendant points to only two cases in which courts other than the Federal Circuit have entertained a criminal defendant's facial challenge to the constitutionality of VA regulations, and neither is particularly persuasive. In *United States v. Williams*, 892 F.2d 1044 (6th Cir. 1990), the Sixth Circuit, in an unpublished opinion, upheld the constitutionality of the disorderly conduct provision at issue here without discussing section 502 or its impact on the court's jurisdiction. The court's silence on the issue cannot be considered compelling reasoning for following its course. *United States v. Fentress*, 241 F. Supp. 2d 526 (D. Md. 2003), *aff'd*, 69 Fed. Appx. 643 (4th Cir. 2003), is a more interesting case, particularly as it comes from the same court (though from a different district court judge and panel of the Fourth Circuit) that decided *Griffin* just two years earlier. The court in *Fentress* held in a footnote that 5 U.S.C. § 703, addressing judicial review of agency actions, provided it with jurisdiction to review the defendant's facial challenge to 38 C.F.R. § 1.218(a)(5) despite the limitation in section 502, relying on language from section 703 indicating that

"agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." However, the court quoted a selective portion of the statute out of context without explaining its significance in relation to the remainder of the statutory language. Section 703, entitled "Form and Venue of Proceeding," reads in full as follows:

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C. § 703. Section 703, therefore, appears to stand for the proposition that courts have the same jurisdiction over review of agency rules and interpretive regulations as they would over other civil and criminal actions where a "prior, adequate, and exclusive" review procedure is not already specified by statute. Since section 502 sets out a statutorily prescribed framework for review of VA regulations in the Federal Circuit, section 703 is presumably inapplicable absent some showing of its inadequacy. *See Telecommunications Research & Action Center v. FCC*, 242 U.S. App. D.C. 222, at *78 (D.C. Cir. 1984) (holding that "[w]here

statutory review is available in the Court of Appeals it will rarely be inadequate" for the purposes of section 703 and noting that in only a small category of cases will the Court of Appeals' lack of jurisdiction over the underlying claim require the District Court to take review in order to ensure some avenue of judicial review). As the *Fentress* court did not explain how the quoted portion of section 703 trumped section 502 and the Fourth Circuit merely summarily affirmed the district court's decision, it is difficult to discount the seemingly clear language of section 502 on the basis of that decision alone.

Defendant also relies on the Supreme Court's decision in *Yakus v. United States*, 321 U.S. 414 (1944), as support for his position. In *Yakus*, the Supreme Court held that Congress could create the U.S. Emergency Court of Appeals, assign it exclusive jurisdiction over the validity of price regulations prescribed by an administrative agency, and foreclose any other consideration of the validity of any price regulation as a defense to a prosecution for its violation. *Id.* The Court held that it was constitutional to bar a defendant from challenging the validity of a price regulation in his criminal trial for its violation so long as he had the opportunity to establish the regulation's unlawfulness in an independent statutory proceeding or was otherwise able to obtain "appropriate judicial relief in the course of either the statutory proceeding or of the criminal trial." *Id.* at 445. The Court noted that a prohibition on challenging the validity of a regulation in the course of a criminal trial would be "objectionable only if by statutory command or in operation it will deny to those charged with violations

. . . an adequate opportunity to be heard on the question of validity." *Id.* Defendant argues that since he was not able to challenge the facial validity of the regulation at issue prior to his conviction, he was denied such an "adequate opportunity to be heard on the question of validity." However, it does not appear that this holding extends to challenges to the *facial* constitutionality of agency regulations, as the Court stated: "We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face . . . [as] [t]here is no contention that the present regulation is void on its face." *Id.*[6]

Justice Rutledge issued a scathing dissent in *Yakus*, arguing that the Court's decision both forced courts to continue to enforce unconstitutional laws and deprived a criminal defendant of the right not to be convicted under an unconstitutional law. *Id.* at 467-85. Interestingly, Congress quickly stepped in and amended the Emergency Price Control Act to specifically address this and one other point that the Supreme Court left open in *Yakus* (whether a criminal defendant could be deprived of the defense of invalidity of a regulation when he is diligently seeking determination of its validity by virtue of the prescribed

---

[6]However, there is no debate that the majority opinion in *Yakus* covered a criminal defendant's as-applied challenges to the price regulations. As a result, the decisions in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) and *United States v. Afshari*, 392 F.3d 1031 (9th Cir. 2004), which hold that a criminal defendant must be given an opportunity to challenge the as-applied constitutionality of a prior administrative determination before it may be used to prove an element in a subsequent criminal prosecution against him, follows uncontroversially from the decision in *Yakus* and does not help the Defendant, as he was given an opportunity to challenge the regulation as it was applied to him in his criminal trial before Magistrate Judge Pollak.

statutory procedure) by providing an additional remedy for criminal defendants pursuant to which they were entitled to a stay of their criminal proceeding in order to raise the issue of the validity of the price regulation before the emergency court if the issue had not been previously determined. *See United States v. George Fish*, 154 F.2d 798, 800 (2d Cir. 1946) (holding that the amendment to the EPCA appeared to close any due process left open by the Supreme Court in *Yakus* by providing an outlet for a criminal defendant to challenge the facial validity of a price regulation prior to his conviction); *United States v. Tantleff*, 155 F.2d 27 (2d Cir. 1946).

Judging from its current rules regarding standing to challenge the constitutionality of laws, the Supreme Court does not appear to share Justice Rutledge's opinions regarding a criminal defendant's due process right to avoid conviction under an unconstitutional law. The Court held in *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973), that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." This rule has been applied even to criminal defendants.[7] *See United States v. Rybicki*, 354 F.3d 124, 130-31 (2d Cir. 2003); *United States v. Albanese*, 554 F.2d 543, 547 (2d Cir. 1977). However, an exception to this standing requirement has been noted with respect to facial challenges on

---

[7]Defendant repeatedly cites *Chambers v. United States*, 22 F.3d 939, 944 (9th Cir. 1994), for the proposition that a criminal defendant has a "personal right not to be convicted . . . under an unconstitutional rule of law." This opinion, however, was vacated at 47 F.3d 1015 (Feb. 21, 1995).

First Amendment grounds. In *Gooding v. Wilson*, 405 U.S. 518 (1972), the

Supreme Court held that:

> Although a statute may be neither vague,
> overbroad, nor otherwise invalid as applied to
> the conduct charged against a particular
> defendant, he is permitted to raise its
> vagueness or unconstitutional overbreadth as
> applied to others. And if the law is found
> deficient in one of these respects, it may not be
> applied to him either, until and unless a
> satisfactory limiting construction is placed on
> the statute. The statute in effect, is stricken
> down on its face. This result is deemed
> justified since the otherwise continued
> existence of the statute in unnarrowed form
> would tend to suppress constitutionally
> protected rights.

*Id.* at 521 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971) (dissenting

opinion of White, J.). This rule certainly permits a criminal defendant to raise a

challenge to the facial overbreadth of a law under which he is being prosecuted.

Nonetheless, it is not clear that a prohibition of a defendant's ability to do so

would violate his due process rights, as the exception is based on the

extraordinary importance of protecting freedom of expression from being

chilled, not on the need to safeguard the defendant from conviction under an

invalid statute. If due process were the concern, facial challenges would be

permitted in all criminal cases, and that is not the case. Magistrate Judge Pollak

therefore held that an as-applied challenge was sufficient to protect Defendant's

due process rights in this case, and Defendant has presented no authority to the

contrary. With regard to any concern that a regulation that potentially infringes

upon constitutionally protected speech will continue in effect if Defendant is not allowed to challenge it here, the avenue for review, the Federal Circuit is adequate to deal with this issue.

Defendant argues that this Court can avoiding directly confronting the due process implications of section 502 by applying a limiting construction under which it would only apply to civil actions. Defendant's limiting interpretation would exclude criminal actions from the statutorily prescribed judicial review scheme because they are brought by the Attorney General, and not by the Secretary [of Veterans Affairs] as specified in section 502. The problem with this construction of the statute, as noted by the Government, is that the regulation at issue – 38 C.F.R. § 1.218 – was promulgated by the Secretary under the powers given to him by Congress pursuant to 38 U.S.C. § 901, which authorizes the "Secretary to prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on Department property." 38 U.S.C. § 901(a)(1). Therefore, a facial challenge to a regulation thus prescribed, which addresses not a particular criminal prosecution under the regulation but rather the regulation in all of its applications, necessarily implicates an action of the Secretary in this instance and thus falls under the purview of section 502.

The plain language of section 502, the lack of anything in its legislative history exempting facial challenges by criminal defendants from its

purview[8], the line of cases relied on by Judge Pollack, and the lack of any

explanation for why the *Fentress* court held that the general provisions of section

703 control over the more specific judicial review framework put in place for

review of VA regulations in section 502 all argue against taking jurisdiction over

Defendant's facial challenge.

In any event, the regulation appears to be constitutional on its face.

Defendant argues that 38 C.F.R. § 1.218(a)(5) is overbroad because the

proscription of "loud or unusual noise" and "loud, abusive, or otherwise

improper language" chills a substantial amount of protected speech and permits

police officers unbridled discretion in enforcing the regulation.  A law will only

be invalidated on overbreadth grounds if it "reaches a substantial number of

impermissible applications." *New York v. Ferber*, 458 U.S. 747, 771 (1982);

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800

(1984) ("[T]here must be a realistic danger that the statute itself will significantly

compromise First Amendment protections of parties not before the Court for it to

be facially challenged on overbreadth grounds.").

Defendant points to several cases where courts have held that

similarly worded laws are unconstitutionally overbroad.  (See Def. Mem. at

_____

[8]The only item of relevance discovered in a review of the legislative history of
section 502 is an isolated statement by Senator Rockefeller made in connection with an
amendment to section 502's preclusion of review over VA rating schedules that "section 502 of
title 38, provides for judicial review of VA rules and regulations in the Federal Circuit." 148 Cong
Rec S 2414, S2415 (State. of Sen. Rockefeller).  The Government's legislative history discussion
does not address the effect of the special rights due criminal defendants on the otherwise clear
and exclusive grant of jurisdiction to the Federal Court of Appeals, and therefore is not helpful to
this analysis.

45-46). However, none of those cases deal with regulations controlling

government facilities such as the VA Hospital, which have been held to be non-

public fora where they have not been opened for expressive activity by the

public.[9] See Fentress, 241 F. Supp. at 531; ISKCON v. Lee, 505 U.S. 672, 679-80

(1992); Warren v. Fairfax County, 196 F.3d 186, 192-93 (4th Cir. 1999). Speech may

be regulated in a non-public forum without offending the Constitution so long as

any limitation is reasonable and not an effort to engage in viewpoint

discrimination. Defendant has presented no authority in support of his position

that a regulation like 38 U.S.C. § 1.218(a)(5) is an unreasonable restriction on

speech in a non-public forum and, indeed, both of the cases he relied on for the

proposition that this Court could review the facial constitutionality of this

provision upheld it against a First Amendment challenge. See Fentress, 241

F. Supp. at 531 (applying rational basis review to hold that section 1.2189(a)(5) is

a reasonable, view-point neutral restriction that does not reach a substantial

amount of protected speech: "The VA's legitimate interest in making a

hospital a place of rest and healing will render a prohibition on 'loud, boisterous,

and unusual noise' which impedes the operation of the hospital reasonable in

---

[9] Defendant did cite to one case, *Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, in which the Court struck down a regulation as overbroad even in the context of a non-public forum – an airport. However, that case is readily distinguishable, as the regulation in question was a blanket prohibition on all "First Amendment activities" within the airport, and not a policy which merely "regulate[d] expressive activity . . . that might create problems such as congestion or the disruption of activities of those who use[d]" the airport. The regulation at issue there, which was described by the Court as a "sweeping ban" and an "absolute prohibition of speech" was both much broader in its scope and more clearly directed to speech than the one at issue here, which on its face only purports to regulate conduct that creates a disruption. See 38 C.F.R. § 1.218(a)(5).

the vast majority of situations"); *Williams*, 892 F.2d at *4-6 (holding that the regulation is not void for vagueness). To the extent that Defendant also claims facial overbreadth under a void-for-vagueness theory, the Federal Circuit held in *Griffin III*, 288 F.3d at 1309, that a provision of the same regulation at issue here, which similarly prohibited "unreasonable noise or coarse utterance," was not facially vague and would not chill a substantial amount of legitimate speech. Thus, this Court recognizes, but for lack of jurisdiction does not decide, that there is a strong argument that the regulation is not unconstitutionally overbroad for the reasons set forth by Defendant.

## V.    *Constitutionality of 38 C.F.R. § 1.218(5) as Applied to Defendant*

Defendant argues that the statute is vague as applied to him because the phrase "unreasonably obstructs," as construed by Magistrate Judge Pollak, is so broad that it failed to give him notice that his conduct was unlawful and also gave the police unfettered discretion to arrest him. It is true that, while the term obstruct is neither vague nor overbroad as written, if it is enforced in a way that could not have been reasonably foreseeable, then it would be vague as applied. *See ISKCON*, 601 F.2d at 831 n.23. Defendant argues that "'unreasonable obstruction'. . . on its face, does not appear to encompass conduct that blocks no one and happens to cause the distraction of other visitors." (Def. Mem. at 20.) However, as discussed in section II, Magistrate Judge Pollak did not find that Defendant blocked no one and merely caused a momentary distraction, she held after a review of the testimony and a

determination of the credibility of the witnesses, that Defendant caused a disruption which caused the line to slow, then refused an order from a police officer to get back into the security line and behave or to leave the building, pushed or hit the officer when he tried to escort him to a quieter area, and then struggled with the officer attempting to handcuff him, requiring other officers to leave their posts and preventing them from screening people to allow them into the building. Thus, Defendant's actions did cause a physical disturbance that obstructed the usual use of the Hospital lobby, which is to screen patients and to permit their entry into the Hospital. Moreover, as was previously noted, Defendant was given actual notice that he was being disruptive and that he would be cited for disorderly conduct if he did not cease in his conduct and cannot now argue that he was not given notice that his actions would subject him to criminal penalty. Thus, the regulation is not vague as applied to Defendant.

## CONCLUSION

Defendant's conviction is affirmed because Magistrate Judge Pollak's finding that he unreasonably obstructed the usual use of the VA Hospital entrances and lobby is not clearly erroneous, because his conduct is culpable even under a heightened *mens rea*, and because he has no due process right to challenge the facial constitutionality of the regulation in his criminal trial. In addition, the Court does not have jurisdiction to take review of the facial challenge. Finally, the *mens rea* that Magistrate Judge Pollak read into the regulation, though insufficient on its own, serves to put a defendant on notice

that his conduct is wrongful when combined with the requirement that an officer

attempt to obtain voluntary compliance with the regulation and direct the

individual to either cease or leave the premises before arresting him.

SO ORDERED.

Dated: Brooklyn, New York
        October 31, 2005

SANDRA L. TOWNES
United States District Judge